UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

ERNEST BAKER,

        Plaintiff,

v.

(OREGON DEPARTMENT OF
CORRECTIONS) O.D.O.C., and STUART
YOUNG, Assistant Administrator of
Religious Services,

        Defendants.

Case No. 2:17-cv-00272-MK

OPINION AND ORDER

KASUBHAI, Magistrate Judge:

      Plaintiff, an inmate at Eastern Oregon Correctional Institution (EOCI), filed suit under 42 U.S.C. § 1983 and alleged violations of his right to religious freedom under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA). Defendants move for summary judgment on grounds that they have accommodated plaintiff's religious requests and he cannot establish a substantial burden on his religious beliefs or practices. For the following reasons, defendants' motion is granted.[1]

---

[1] The parties have consented to jurisdiction and issuance of a final decision by a United States Magistrate Judge. (ECF Nos. 7, 14)

1 — OPINION AND ORDER

## DISCUSSION

Plaintiff alleges that defendants substantially burdened his religious beliefs – which he initially characterized as "Israelite" – by precluding his participation in special Passover meals and denying him kosher food and other items necessary to the practice of his religion. Compl. at 3 (ECF No. 2). Plaintiff maintains that in doing so, defendant Stuart Young, the Assistant Administrator of Religious Services, held him to a "Rabbinical Standard" of Judaism that is unrelated to plaintiff's beliefs as a "Natzarim Yisraelite" and "Orthodox Sephardic Jew." *Id.* at 4-5; *see also* Pl.'s Resp. to Defs.' Mot. Summ. J. (Pl.'s Resp.) at 5-6 (ECF No. 73); Young Decl. Att. 16 (ECF No. 67).

The court previously granted summary judgment on several claims based on plaintiff's failure to exhaust his administrative remedies.[2] Remaining are plaintiff's claims that defendants burdened his religious beliefs by: 1) denying special Passover meals; 2) denying or prohibiting religious apparel; and 3) failing to provide adequate kosher food and drink options.[3] To prevail on their motions for summary judgment, defendants must show there is no genuine dispute as to any material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must construe the evidence and

---

[2] The court found that plaintiff was barred from raising claims that were not alleged in Discrimination Complaint No. DC-EOCI-2016-01-055, which asserted the denial of kosher food and items "such as a [tzit-tzit] & Bucharian Kippa & kosher vitamins, meats, cheeses & soaps," "drinks with [his] meals," and special Passover meals. Young Decl. Att. 2 at 2-4, 64-65.

[3] In his response, plaintiff presents additional arguments regarding defendants' alleged denial of sack lunches, festival pictures, a shofar horn, a trained chaplaincy, work assignments, religious rest days, religious television channels, and a Mezuzah pendant. *See* Pl.'s Resp. at 3-4, 16. However, these claims were not included in DC-EOCI-2016-01-055 and are unexhausted. Further, while DC-EOCI-2016-01-055 referenced the denial of participation in a 2011 "Day of Atonement" festival, any RUILPA or § 1983 claim arising from this denial is barred by the relevant four- and two-year statute of limitations, respectively. *Pouncil v. Tilton*, 704 F.3d 568, 573 (9th Cir. 2012); *Sain v. City of Bend*, 309 F.3d 1134, 1139 (9th Cir. 2002).

draw all reasonable inferences in the light most favorable to plaintiff. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

A. Standards

To sustain his First Amendment claim, plaintiff must show that defendants burdened the free exercise of his religion without any justification reasonably related to a legitimate penological interest. *See Shakur v. Schiro*, 514 F.3d 878, 884 (9th Cir. 2008). To constitute an impermissible burden, the government's conduct must do more than "inconvenience" a religious exercise; it "must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jones v. Williams*, 791 F.3d 1023, 1031-32 (9th Cir. 2015) (citations omitted). An inmate need not "objectively show that a central tenet of his faith is burdened," because it is the "sincerity of his belief rather than its centrality to his faith that is relevant to the free exercise inquiry." *Shakur*, 514 F.3d at 884. At the same time, the asserted belief must be "sincerely held" and "rooted in religious belief" rather than secular or philosophical concerns. *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994) (citations omitted).

RLUIPA similarly prohibits prison officials from infringing on a prisoner's religious beliefs or practices. *See Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005) ("RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion."). To establish a RLUIPA claim, plaintiff must show that defendants imposed "a substantial burden on [his] religious exercise." 42 U.S.C. §§ 2000cc-1(a), 2000cc-2(b); *Greene v. Solano Cnty. Jail*, 513 F.3d 982, 988 (9th Cir. 2013) (finding that a prohibition against a religious exercise may constitute a substantial burden). If plaintiff makes this showing, the burden then shifts to

3 — OPINION AND ORDER

defendants to prove that the burden imposed "serves a compelling government interest and is the least restrictive means of achieving that interest." *Shakur*, 514 F.3d at 889; 42 U.S.C. §§ 2000cc-1(a), 2000cc-2(b).

B. Analysis

As the court held previously, defendants are entitled to summary judgment on plaintiff's claims for money damages under RLUIPA. *See* ECF No. 38 at 11; *see also Wood v. Yordy,* 753 F.3d 899, 904 (9th Cir. 2014) (finding that "there is nothing in the language or structure of RLUIPA to suggest that Congress contemplated liability of government employees in an individual capacity"); *Alvarez v. Hill,* 667 F.3d 1061, 1063 (9th Cir. 2012) (noting that "money damages under RLUIPA are not available against states because of their sovereign immunity"); *Holley v. Cal. Dep't of Corr.,* 599 F.3d 1108, 1114 (9th Cir. 2010) (holding that "the Eleventh Amendment bars Holley's suit for official-capacity damages under RLUIPA").

The Eleventh Amendment similarly bars § 1983 claims for money damages against ODOC or Young in his official capacity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66, 71 (1989). Thus, plaintiff may obtain only injunctive relief against the Oregon Department of Corrections (ODOC) or money damages against Young in his individual capacity.

1. Passover Meals

Plaintiff alleges that beginning in 2016, ODOC and Young prohibited him from receiving special Passover meals served to Jewish inmates.[4] Plaintiff maintains that, while he does not

---

[4] Plaintiff also alleges that he was denied a Seder plate with "matzah & bitter herb & grape juice." Compl. at 3. Plaintiff does not indicate when this denial occurred, and DC-EOCI-2016-01-055 does not reference this claim. Regardless, given their similarity, any claim on this ground is subject to the same analysis as plaintiff's claim for special Passover meals.

4 — OPINION AND ORDER

subscribe to "Rabbinical" standards of Judaism, he nonetheless "follows strict 'Orthodox' Jewish standards" and is entitled to receive the same Passover meals. Pl.'s Resp. at 6.

On January 26, 2016, plaintiff received the following memorandum:

> The ODOC process has changed for who is allowed to receive Kosher Passover Meals. According to our Administration in Salem, only those who are of Jewish faith will receive the Kosher 8 days of Passover meals.
>
> Your request [for Passover meals] will be accommodated in the following way this year.
>
> You will continue to receive your regular Kosher diet meals. You will also be given Matzo to supplement your dietary needs during this time.

Young Decl. Att. 2 at 65.

On January 27, 2016, plaintiff submitted a kyte to his chaplain expressing concern that only inmates of Jewish faith would receive the special Passover meals. *Id.* ¶ 40 & Att. 15. Although plaintiff had previously self-identified as being Messianic, he told the chaplain he was an "Orthodox Jew" and requested the special Passover meals. *Id.*

On February 8, 2016, plaintiff provided a "DNA chart" and asserted that it established his "Sephardic Jewish bloodline" as an "Orthodox Sephardic Jew." *Id.* ¶ 41 & Att. 16.

On February 19, 2016, Young advised plaintiff that Jewish lineage is confirmed when a person's mother is Jewish and asked plaintiff to provide his mother's name, contact information, and her synagogue so that ODOC could confirm his claim. Young Decl. ¶ 43 & Att. 17. Young further stated, "A review of your Religious Services participation records show[s] you are participating in Torahmen which is a Messianic religious service." *Id.* Att. 17. Young informed plaintiff that ODOC had consulted with Messianic Rabbis concerning the Eight Days of Passover, and they advised "that a vegetable/bean meal prepared in a kosher manner with matzo, served on a paper tray with plastic utensils was acceptable based on Messianic tenets of faith

from the Torah." *Id.* Young advised plaintiff that the special Passover meals were "designed for strict adherence to a Jewish dietary law in which specific food items are removed from the regular kosher diet" and that the meal he would be provided complied with his Messianic affiliation. *Id.* ¶ 42 & Att. 17. Young concluded by noting that plaintiff was "not prohibited from observing the Eight Days of Passover meals and a Seder Meal as Messianic." *Id.*

On April 3, 2016, plaintiff again asserted that he was an "Orthodox Jew" rather than a Messianic Jew, while proclaiming that "all Israelites/Jews ARE Messianics." Young Decl. ¶ 44 & Att. 18. Plaintiff also provided contact information for a synagogue his mother attended in Ashland, Oregon. *Id.* Rabbi Avrohom Perlstein, an ODOC chaplain, spoke with Rabbi Zweibel of the Ashland synagogue to confirm plaintiff's claim; Rabbi Zweibel stated that he had never heard of plaintiff or his mother. *Id.* ¶ 45 & Atts. 19, 22.

On April 19, 2016, Young advised plaintiff that Rabbi Zweibel did not support his claim to Jewish heritage, and plaintiff disputed the rabbi's assertion. *Id.* ¶ 46-47 & Atts. 20-21.

In December 2016, plaintiff again raised the issue of Passover meals. Young informed plaintiff that the matter would not be revisited. *Id.* ¶¶ 49-50 & Atts. 23-24.

In February 2019, ODOC informed plaintiff that he will receive the same Passover meals served to Jewish inmates unless he asks to be removed from the Passover meals or engages in behaviors – such as ordering non-kosher canteen items – that would make him ineligible to receive such meals. Suppl. Young Decl. ¶¶ 4-5.

    a. <u>Injunctive and Declaratory Relief</u>

Defendants argue that their agreement to provide plaintiff with special Passover meals has eliminated any burden on his religious beliefs and renders his claims for declaratory and

injunctive relief moot.[5] Defendants also cite RLUIPA's safe harbor clause, which allows a government entity to avoid liability "by retaining the policy or practice and exempting the substantially burdened religious exercise, [or] by providing exemptions from the policy or practice for applications that substantially burden religious exercise." 42 U.S.C. § 2000cc-3(e); *see also Forter v. Geer*, 868 F. Supp. 2d 1091, 1098 (D. Or. 2012) (finding prison officials' cessation of challenged conduct barred recovery under RLUIPA), *aff'd*, 536 Fed. App'x 724 (9th Cir. 2013).

Based on ODOC's representation that plaintiff will receive the same Passover meals served to Jewish inmates, he has obtained the relief he seeks and his claim for injunctive relief is moot. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (a case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome") (citation omitted). Nonetheless, plaintiff argues that his claim is not moot, because defendants

> are still forcing Plaintiff to follow Rabbinical Judaism guidelines when Plaintiff is a Natzarim Yisraelite- NOT a Rabbinical Jew. Natzarim follow similar yet differing food standards on Kosher and different Calendar Festival Days sometimes within a months difference placing a substantial burden upon Plaintiff by ODOC in making Plaintiff follow tenets of a belief and Rabbinical Standard and Calendar Festival Days that are NOT even that of Plaintiff.

Pl.'s Suppl. Resp. at 3 (ECF No. 98).

---

[5] Defendants also reassert the defense of failure to exhaust with respect to plaintiff's Passover meal claim. The court previously found that plaintiff raised a question of fact regarding exhaustion because defendants had not responded to a grievance and a grievance appeal shortly before plaintiff was required to file a tort claim notice to preserve any potential tort claims. Defendants emphasize that plaintiff's Passover claim arose on January 26, 2016, and the 180-day tort notice deadline would not have run until July 25, 2016, more than one month after plaintiff's notice of tort claim. Given that ODOC accepted plaintiff's Passover meal claim as part of EC-EOCI-2016-01-055, Plaintiff could have reasonably believed the same timeline applied, and I am not inclined to revisit this issue. *Id.* Att. 2 at 64.

7 — OPINION AND ORDER

However, the only claims at issue in this case are those raised in DC-EOCI-2016-01-055, which does not assert that plaintiff is prohibited from observing "differing food standards" on "different Calendar festival days."[6]

Plaintiff also suggests that defendants could again deny him Passover meals if he does not abide by their standards. Granted, "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Already, LLC*, 568 U.S at 91. Rather, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 190 (2000).

I find that defendants' representations make it clear that plaintiff will not be denied special Passover meals unless he either requests not to receive them or engages in conduct that places the sincerity of his religious commitment at issue. To the extent plaintiff objects to the conditions of his participation in Passover meals, his adherence to religious practices informs defendants of the sincerity of his beliefs and does not dilute their commitment to provide plaintiff with the accommodation he seeks. Further, defendants agreed to provide plaintiff with the meals he requested prior to the beginning of Passover in 2019, and plaintiff has not presented evidence that he was denied special Passover meals. *Clark v. Chappell*, 735 Fed. App'x 825, 826 (9th Cir. May 23, 2018) (affirming the dismissal of prisoner's § 1983 claims for injunctive relief "arising from the denial of Clark's entry into a kosher diet program," "because Clark is now a member of the kosher diet program, rendering his claim moot"); *Bilal v. Lehman*, 2006 WL 3626808, at *4 (W.D. Wash. Dec. 8, 2006) (holding that a prison's good-faith decision to

---

[6] Notably, plaintiff's assertion that his "food standards on Kosher" differ from those of "Rabbinical Judaism" seems to directly contradict his claim that he requires the same Passover meals as Jewish inmates. Pl.'s Suppl. Resp. at 3.

provide a Muslim inmate with halal meals eliminated any burden on his religious beliefs and mooted his First Amendment and RLUIPA claims).

Accordingly, ODOC's decision to provide plaintiff with the same Passover meals served to Jewish inmates renders his claims for declaratory and injunctive relief moot.

### b. Money Damages

Plaintiff also seeks money damages against Young under § 1983. Defendants maintain that Young did not burden plaintiff's religious beliefs, because he accommodated plaintiff's requests for Passover meals based on plaintiff's stated religious affiliation and practices. Alternatively, defendants argue that Young is entitled to qualified immunity.

It is questionable whether plaintiff has met his initial burden of showing that the denial of special Passover meals imposed on substantial burden on his sincerely held religious beliefs. Plaintiff does not identify what particular Passover foods he was denied or explain why the meals he was given failed to conform to his beliefs and hindered his observance of Passover. Even if plaintiff raises a genuine issue of fact as to whether Young substantially burdened his religious beliefs, Young is entitled to qualified immunity.

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly,* 137 S. Ct. 548, 551 (2017) (per curiam). The Supreme Court has emphasized that the asserted right "must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards,* 566 U.S. 658, 664 (2012) (brackets and internal quotation marks omitted).

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority[.]'" It is not enough that the rule is suggested by then-

existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that "every reasonable official" would know.

*District of Columbia v. Wesby*, 138 S. Ct. 577, 589-90 (2018) (citations omitted). In other words, while qualified immunity does not require "a case directly on point, [] existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Moreover, the Supreme Court has admonished lower courts, repeatedly, that "the clearly established right must be defined with specificity." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (per curiam); *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (noting that the Court has "'repeatedly told courts – and the Ninth Circuit in particular – not to define clearly established law at a high level of generality.'") (citations omitted) (per curiam); *Wesby*, 138 S. Ct. at 590 ("We have repeatedly stressed that courts must not 'define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.'") (citation omitted); *White*, 137 S. Ct. at 552 ("Today, it is again necessary to reiterate the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.' As this Court explained decades ago, the clearly established law must be "particularized" to the facts of the case.") (citation omitted); *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam); *City & Cnty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1775-76 (2015).

Thus, the question is not whether plaintiff had a clearly established right to the free exercise of his religion or to meals consistent with his religious beliefs; rather, the question is whether that right was clearly established in the particular circumstances known to Young. Based on the evidence presented, a reasonable prison official would not have known that providing

plaintiff with a kosher meal, rather than the Passover meal provided to Jewish inmates, violated his clearly established First Amendment rights.

Significantly, Young did not bar plaintiff from participating in annual Passover meals. Instead, plaintiff received a kosher meal with vegetables and beans, along with matzo, in accordance with the advice Young received from Messianic Rabbis. Young Decl. ¶¶ 42, 52.[7] According to the information known to Young, plaintiff had previously self-identified as being Messianic and attended "Torahmen" services, which are considered Messianic. *Id.* ¶ 52 & Att. 17. The record also reflects that plaintiff requested a "Messianic" kippah and tzit-tzit and had a history of purchasing non-kosher food items from the canteen. *Id.* Att. 2 at 53 (April 2015 letter noting that plaintiff had purchased canteen items "that do not conform to kosher requirements or standards"), Att. 8 (January 2016 letter again noting plaintiff's purchase of non-kosher canteen items), Att. 9 (a white "Kippah Messianic Head Covering" made available for purchase at plaintiff's request), Att. 14 (a "Messianic" tzitzit made available for purchase at plaintiff's request). Based on this information, Young consulted with Messianic Rabbis and accommodated plaintiff's beliefs accordingly.

Although plaintiff disputed this accommodation, he did not explain why his sincerely-held beliefs – though not "Rabbinical" – nonetheless required the same Passover meal served to Jewish inmates. Instead, plaintiff asserted that he was "a Jew by birth on my mother's side" and relied on his "Sephardic Jewish blood-line." *Id.* Atts. 15-16, 21, 23. Plaintiff's proclamations of faith did not provide further clarity to his beliefs. *See also* Pl.'s Resp. at 13 ("Plaintiff 'IS' a

---

[7] Although not alleged in his Complaint, plaintiff now asserts that he did not receive the vegetable/bean Passover meal approved by Young. This claim was not included in DC-EOCI-2016-01-055 and is not before the court. Moreover, plaintiff does not allege that Young was personally involved in the failure to provide those meals.

11 — OPINION AND ORDER

Messianic, but follows strict Orthodox standards being a 'Natzarim.' Plaintiff is an Orthodox Jew who believes in Messiah; a Natzarim Yisraelite."). Plaintiff professed adherence to the written Torah but not "the oral Talmud law" or the "Rabbinical Standards" of Judaism. Pl.'s Resp. at 6 & Exs. at 69; Young Decl. Atts. 17, 23. Plaintiff also represented that he did "believe in a coming Messiah. I believe strictly adhering to Torah as an Orthodox Jew ushers in the Messianic kingdom and King…this 'YES' makes me a 'Messianic,' and I need certain items & follow certain practices strictly following Torah & my belief of Messianism as an 'Orthodox Sephardic Jew' in regard to my Messianic beliefs[.]" Young Decl. Att. 23 at 1-2.

Plaintiff nonetheless argues that Young's rejection of plaintiff's perceived Jewish heritage and his reliance on Rabbi Zweibel essentially implemented a policy of "making people prove their race" to obtain special Passover meals. Pl.'s Resp. at 6. Granted, plaintiff's Jewish heritage or lineage should not dictate his eligibility for religious accommodations, as the sincerity of plaintiff's beliefs is paramount. *Shakur*, 514 F.3d at 884; *Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999) (reliance on rabbi's opinion to determine whether inmate was Jewish and entitled to requested religious accommodations "erroneously substituted the objective 'accuracy' of Jackson's assertion that he is Jewish for the correct test - whether Jackson's beliefs are 'sincerely held'"). In this case, however, the fact that Young apparently would have accepted Jewish heritage as an alternative to Jewish faith or practices does not raise a genuine issue of material fact. The record makes clear that plaintiff's eligibility for Passover meals was not conditioned solely on confirmation of his matrilineal Jewish heritage. Rather, Young and other ODOC officials relied on plaintiff's self-identification as a "Messianic" and his religious practices when considering his request for special Passover meals. Young Decl. Att. 17; Pl.'s Resp. Exs. at 69.

Plaintiff cites no case, and the court is aware of none, clearly establishing a First Amendment right to Passover meals in these circumstances. *See Barnes v. Furman*, 629 Fed. App'x 52, 54-55 (2d Cir. Oct. 22, 2015) (holding that a prison official "was not unreasonable" in denying a prisoner kosher meals "because he was registered as Hebrew Israelite in accordance with the prison policy limiting kosher meals to Jewish inmates") (summary order); *Piatnitsky v. Stewart*, 2019 WL 2233342, at *17 (W.D. Wash. Feb. 27, 2019) ("Because it was not clearly established at the time of the violation that a policy granting Passover participation for only those inmates who received kosher meals or attended religious services was unconstitutional, or that defendants were required to provide plaintiff with Passover meals regardless of the policy, defendants are entitled to qualified immunity against plaintiff's claims for damages."), *report and recommendation adopted*, 2019 WL 2224930 (W.D. Wash. May 23, 2019).

By plaintiff's own arguments to ODOC, Young made a mistake about the nature of plaintiff's religious beliefs – precisely the type of conduct that is covered by qualified immunity. *See* Young Decl. Att. 23 at 1 (stating that "DOC/Stuart Young is confusing 'Messianic Judaism' and my beliefs as a Sephardic Orthodox Jew together and they are two completely different religions/Beliefs!"). As noted by the Supreme Court, qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *al-Kidd*, 563 U.S. at 743 (internal quotation marks omitted). In the particular circumstances of this case, Young was neither. Given plaintiff's representations and his religious practices, Young reasonably – even if mistakenly – believed that plaintiff's beliefs were Messianic and that Messianic Passover meals conformed to his religious beliefs.

Accordingly, Young is entitled to qualified immunity and summary judgment should be granted on this claim.

2. Religious Apparel

Plaintiff next alleges that defendants substantially burdened his religious beliefs by denying him a kippah (a headpiece) and a tzit-tzit (a garment), by prohibiting photographs with religious apparel, and by prohibiting women from wearing head coverings during Jewish marriage ceremonies. Compl. at 3-5.

a. Kippah

On December 6, 2015, plaintiff asked Young about purchasing a kippah, and in January 2016, Young informed plaintiff that his office had found a blue knit kippah that would be made available for purchase through the prison commissary. Young Decl. ¶¶ 27-28 & Atts. 7-8. Ultimately, ODOC was unable to contract with the vendor for the blue kippah. *Id.* ¶ 29.

ODOC then promulgated rules mandating that all religious head coverings be white in color. *Id.* ¶ 30-31. On December 6, 2016, ODOC security managers approved a white kippah for purchase by inmates. *Id.* ¶ 32 & Att. 9 (showing a white "Kippah Messianic Head Covering").

Plaintiff maintains that he "tried to purchase this so called 'Messianic Kippa' [for] almost two years now," and he "still has not yet received any such said Kippa, [and] though he has complained, no one is being held accountable or fixing the issue by inquiring to the vendor about updating their address, or finding out why the vendor is not sending the products ordered." Pl.'s Resp. at 11 & Exs. at 29-32. Plaintiff does not allege that defendants prohibited him from obtaining a kippah, and the vendor's failure to deliver a kippah cannot be attributed to them.

Plaintiff also argues that defendants fail to "explain why Plaintiff cannot receive a white Bucharian Kippa [white Buchari Kippot $28.00 item # KPT-EY-13183], which is also available

through this same approved vendor." *Id.* at 11. Plaintiff offers no evidentiary support for this statement. Regardless, Young found a vendor at plaintiff's request, and ODOC ultimately approved a white kippah for purchase. Accordingly, defendants did not impose a substantial burden on plaintiff's religious beliefs.

### b. Tzit-tzit

On August 21, 2015, plaintiff asked Young to find a vendor that could provide a tzit-tzit. Young Decl. ¶ 33 & Att. 10. Apparently, an approved vendor had refused to sell plaintiff a tzit-tzit because plaintiff "was not Jewish, having never gone through an orthodox conversion." Pl.'s Resp. Exs. at 25.

On September 15, 2015, Young informed plaintiff that his office had found a vendor and the vendor's tzit-tzit would be reviewed for security purposes at an upcoming security meeting. Young Decl. ¶ 34 & Att. 11.

At the meeting, security managers raised concerns about pockets that could conceal contraband, and the tzit-tzit was not approved. *Id.* ¶ 35 & Att. 12. On October 15, 2015, Young informed plaintiff about the decision. *Id.* ¶ 36 & Att. 13.

On December 6, 2015, plaintiff sought further information about a tzit-tzit vendor, and in January 2016, Young responded that his office had yet to find a vendor for a blue tzit-tzit. *Id.* at ¶¶ 37-38, Atts. 7-8. According to Young, inmate clothing must be blue for security purposes to identify inmates and prevent escapes. Young Decl. ¶ 38.

On May 11, 2017, security managers approved a tzit-tzit that could be dyed blue by the vendor. In August 2017, the garment was made available for purchase. *Id.* ¶ 39 & Att. 14 (showing a "Messianic" "tzitzit").

Plaintiff fails to show that defendants substantially burdened his religious beliefs. Young attempted to find an approved tzit-tzit vendor, and ODOC security managers ultimately approved a tzit-tzit for purchase. Even if ODOC's delayed approval somehow burdened plaintiff's exercise of religion, its justification was reasonably related to the legitimate penological interest of security "by preventing contraband smuggling." *Bull v. City & Cnty. of San Francisco*, 595 F.3d 964, 977 (9th Cir. 2010).

### c. Religious Adornments in Photographs

On June 2, 2015, plaintiff complained that five photographs he took in his housing unit were "denied" because of "props" in the photographs; plaintiff maintains that those "props" were religious adornments. Young Decl. *Id.* ¶¶ 22-26 & Att. 6. However, plaintiff complained to Tom Lemens, EOCI Assistant Superintendent of Security, and alleges no action taken by Young with respect to the photographs. *Id.* Accordingly, Young could not have substantially burdened plaintiff's beliefs and cannot be held personally liable under § 1983. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that liability under § 1983 arises upon a showing of personal participation by each defendant). Further, plaintiff fails to establish how the denial of five photographs constituted a substantial burden.

### d. Women's Head Coverings

Plaintiff also alleges that defendants have "denied our women the right to wear their head coverings at weddings." Compl. at 5. However, the materials plaintiff attached to DC-EOCI-2016-01-055 referenced another inmate's fiancé and her request to wear a head covering. Young Decl. Att. 2 at 15-18. Plaintiff exhausted no other claim regarding women's head coverings, and plaintiff does not have standing to enforce the rights of a fellow inmate.

Further, the record includes no evidence that plaintiff's fiancé, or any other woman associated with plaintiff, requested and was denied permission to wear a religious head covering. Plaintiff cannot sustain this claim.

### 3. Kosher Food Items and Drink Containers

Finally, plaintiff contends that the ODOC kosher diet does not include leafy greens, nuts, or fruit and the items available for purchase do not include kosher meats, cheeses, or vitamins. Compl. at 3-4; *see also* Young Decl. Att. 2 at 3; Pl.'s Resp. at 1-2.

It is unclear what food items are included in the kosher meal provided to inmates, and plaintiff does not allege that ODOC's kosher meals violate the dietary requirements of his religious beliefs. Rather, it seems that plaintiff simply would like a variety of foods. While plaintiff purports to cite cases requiring prisons to provide a "wide variety" of kosher food items, Pl.'s Resp. at 2, 9, those cases neither include such language nor mandate a particular sampling of kosher food. *See Ashelman v. Wawrzaszek*, 111 F.3d 674 (9th Cir. 1997) (noting that a prisoner warden conceded that a "kosher TV-dinner could be supplemented with whole fruits, vegetables, nuts, and cereals" at minimal cost, but not mandating any particular variety of foods); *Bartlett v. Atencio*, Civ. No. 1:17-CV-00191-CWD (D. Idaho 2017) (case settled through an agreement requiring kosher diets to be provided in Idaho correctional facilities).

Plaintiff is correct that the foods available for purchase by inmates does not include kosher meats. Marks Decl. Att. 1 (ECF No. 94) (canteen list indicating that tuna is the only kosher "meat" available). However, courts have held that "[p]risoners have no right to any particular quantum of meat in their diets[,]" even religious diets. *Fonseca v. Cal. Dep't of Corr. & Rehab.*, 2015 WL 4172194, at *4 (S.D. Cal. July 10, 2015) (serving fish more often than beef did not substantially burden inmates' sincerely held religious beliefs); *see also Shoemaker v.*

*Williams*, 2013 WL 528306, at *2 (D. Or. Feb. 11, 2013) (rejecting prisoner's claim that a meat-free diet infringed on his religious rights when the prisoner did not show that "his religion requires the consumption of meat").

Further, plaintiff presents no evidence that the unavailability of kosher meats, cheeses, or vitamins forces him to engage in conduct contrary to his beliefs. *Jones*, 791 F.3d at 1031-32 (substantial burden exists where the plaintiff is pressured to modify his behavior and violate his beliefs); *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005). For example, plaintiff does not allege that unwanted health effects from the kosher diet requires him to purchase non-kosher food items. Rather, plaintiff simply complains that defendants are "forcing" him to be a vegetarian, which is a secular concern rather than a sincerely held religious belief. Pl.'s Resp. at 16. Moreover, there is no evidence in the record that Young personally denied a request to provide kosher food items. These products are procured by the ODOC food services department and not by Young or the Office of Religious Services. Suppl. Young Decl. ¶¶ 8-9 (ECF No. 93).

Finally, plaintiff alleges that the drink containers in the "chow hall" are not "clean," and he should be allowed to take his kosher drink option (a tea bag) to his housing unit where hot and cold taps are available. Pl.'s Resp. at 2. Alternatively, plaintiff maintains that defendants must provide a juice box with kosher meals or install hot and cold water taps in the chow hall to accommodate his kosher drink requirements. *Id.*

Plaintiff asserts only a speculative fear of "contamination" and presents no evidence that available drink containers are not adequately cleaned, or that ODOC's actions caused him to modify his behavior in a matter that violated his religious beliefs. Instead, plaintiff asserts that he must spend his "own money" on drinks from the canteen. *Id.* This is not a substantial burden on his religious beliefs. Moreover, plaintiff presents no evidence that Young personally forbade

plaintiff from taking his tea bag to his housing unit due to the drink containers in the chow hall. Accordingly, plaintiff fails to establish that the available kosher food items or drink containers imposed a substantial burden on his religious beliefs, and summary judgment should be granted.

## CONCLUSION

Defendant's Motion for Summary Judgment and Supplemental Motion for Summary Judgment (ECF Nos. 66, 92) are GRANTED, and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 17th day of September 2019.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI
United States Magistrate Judge